NOT RECOMMENDED FOR PUBLICATION
File Name: 10a0746n.06

No. 08-5230

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 30, 2010
LEONARD GREEN, Clerk

| | |
|---|---|
| KEITH LAMONT ADAMS, | ) |
| | ) |
|     Petitioner-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| | ) THE WESTERN DISTRICT OF |
| GLENN HAEBERLIN, Warden, | ) KENTUCKY |
| | ) |
|     Respondent-Appellee. | ) |

Before: BOGGS, SILER, and MOORE, Circuit Judges.

**SILER**, Circuit Judge. Petitioner Keith Lamont Adams, who is serving a fifty-year sentence for his conviction on murder and first-degree rape charges, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Adams contends that, pursuant to the Fourteenth Amendment, his conviction was constitutionally infirm because he was not competent to stand trial. He also contends that he lacked the capacity to knowingly and intelligently waive his *Miranda* rights, and that the trial court violated his Fifth Amendment rights by allowing his confession to be used against him at trial. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs our review of Adams's claims. For the following reasons, we affirm.

**I.**

In 1998, the body of Mary Elizabeth Taylor was found in a vacant lot in Louisville, Kentucky. She had been sexually assaulted and murdered. After Louisville police learned that the

victim had last been seen with Adams, he was detained and transported to the police station for questioning. He was escorted to an interview room and advised of his *Miranda* rights before a consensual polygraph examination was administered. At the close of the examination, the police officer told Adams that he had failed the polygraph and was not being truthful. The officer also falsely told Adams that his fingerprints had been found on a brick used to kill the victim. Adams then said he would tell the truth and made inculpatory statements to the police. The police stopped Adams and read him the *Miranda* warnings a second time. Adams indicated that he understood his rights, agreed to waive his rights, and executed a rights waiver form. He then admitted to hitting the victim in the head with a brick and having sex with her. Adams also agreed to give a videotaped statement. At the outset of the videotaped interview, the police once again advised Adams of his *Miranda* rights, and Adams once again agreed to waive his rights.

Adams was indicted and later moved to dismiss the indictment, arguing that he was not competent to stand trial. The trial court held a competency hearing and heard testimony from J. Robert Noonan, Ph.D, who evaluated Adams on behalf of the Kentucky Correctional Psychiatric Center, and Peggy Pack, Ph.D., who evaluated Adams on behalf of the defense. The two clinical psychologists agreed that Adams is mentally retarded and suffers from schizophrenia; however, they differed regarding his level of intellectual functioning. Dr. Noonan testified that Adams was competent to stand trial, and Dr. Pack testified that Adams was not competent to stand trial. The trial court credited Dr. Noonan's testimony and found that Adams was competent to stand trial.

Adams also moved to suppress the inculpatory statements he had given to the police. The trial court held a suppression hearing, which incorporated the evidence presented at the competency

hearing. The two clinical psychologists disagreed regarding Adams's intellectual and mental capacity to understand his *Miranda* rights. Dr. Noonan testified that Adams was capable of understanding the *Miranda* warnings, and Dr. Pack testified that Adams was not mentally capable of understanding his *Miranda* rights. Detective Rick Eastham testified that Adams was advised of his *Miranda* rights three times, stated that he understood his rights, and waived his rights on each occasion. Detective Eastham further testified: "[Adams] appeared lucid, appeared to be aware of where he was and was not rambling. He was speaking coherently and seemed, in my opinion, to understand what was taking place. . . . Adams appeared normal to me, my understanding of normal. And he appeared to understand what was taking place." [App'x 121-22.] The trial court denied Adams's motion to suppress.

Adams was tried before a jury and convicted of murder and rape in the first degree. On direct appeal, the Kentucky Supreme Court affirmed the trial court's competency determination, holding that it was "clearly supported by substantial evidence in the record." [ROA 367.] It also affirmed the trial court's denial of Adams's motion to suppress statements, finding that "based upon the totality of the circumstances surrounding the custodial interrogation, [Adams] was not coerced into waiving his Fifth Amendment rights and he was fully aware of the nature of those rights and the consequences of such a waiver." [ROA 370.] The district court later denied Adams's petition for a writ of habeas corpus.

## II.

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel,

No. 08-5230
Adams v. Haeberlin

and to assist in preparing his defense may not be subjected to trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). The federal test of incompetence seeks to ascertain whether a criminal defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). Under Kentucky law, "'[i]ncompetency to stand trial' means . . . lack of capacity to appreciate the nature and consequences of the proceedings against one or to participate rationally in one's own defense." Ky. Rev. Stat. § 504.060(4).

There is no meaningful distinction between Kentucky's standard for competence to stand trial and the federal standard articulated by the Supreme Court. Nevertheless, because the Kentucky Supreme Court reviewed Adams's competency claim under Kentucky law rather than the Fourteenth Amendment, we review this claim under the modified AEDPA standard of review. *See Filiaggi v. Bagley*, 445 F.3d 851, 858-59 (6th Cir. 2006) (applying the modified AEDPA standard of review when the Ohio Supreme Court analyzed habeas petitioner's competency claim under Ohio law rather than the Fourteenth Amendment). "This standard of review requires the court to conduct a careful review of the record and applicable law, but nonetheless bars the court from reversing unless the state court's decision is contrary to or an unreasonable application of federal law." *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

"A determination of competence is a factual finding, to which deference must be paid." *Filiaggi*, 445 F.3d at 858. Under the AEDPA, the state court's factual determination that Adams was competent to stand trial is presumed to be correct, and Adams has the burden of rebutting this

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Adams contends that the trial court should have given more weight to Dr. Pack's testimony. However, this is insufficient to rebut the presumption that Adams was competent to stand trial. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree . . . but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Although Adams is mentally retarded, a finding that a defendant is mentally retarded is not dispositive as to a finding of competency to stand trial. *Adkins v. Virginia*, 536 U.S. 304, 306 (2002) ("Those mentally retarded persons who meet the law's requirements for criminal responsibility should be tried and punished when they commit crimes."). The essential question on habeas review is whether the trial court could have reasonably relied on Dr. Noonan's testimony to find that Adams was competent to stand trial. Dr. Noonan testified that Adams was "clearly competent" and based that assessment on the following factors: (1) his verbal IQ score of 65; (2) his past IQ scores that placed him in the mild range of mental retardation; (3) the fact that Adams had been found competent to stand trial twice before; (4) Dr. Noonan's assessment that Adams's schizophrenia was controlled with medication; (5) Adams's past experience in the courtroom; (5) his understanding of the charges against him and the seriousness of the charges; (6) his understanding of the various roles of people in the courtroom; (7) his understanding of the possible consequences of being found guilty; and (8) his ability to aid his attorney in his defense. Thus, the Kentucky Supreme Court's determination that the trial court did not clearly err in finding that Adams was competent to stand trial was not objectively unreasonable in light of the evidence presented at the state court competency hearing.

### III.

Adams contends that he was not competent to waive his *Miranda* rights and that the state court violated his Fifth Amendment rights by allowing his confession to be used against him at trial. We review this claim under the standards set forth in the AEDPA. "Whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent." *Williams v. Jones*, 117 F. App'x 406, 412 (6th Cir. 2004) (unpublished). The state court's factual finding that Adams understood what was being said and asked of him is presumed to be correct unless Adams demonstrates otherwise by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Moreover, Adams has the burden of establishing that, under the totality of the circumstances, he did not knowingly and intelligently waive his *Miranda* rights. *See Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005).

"The relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (en banc) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)). The competency standard for pleading guilty or waiving the right to counsel is not higher than the competency standard for standing trial. *Godinez v. Moran*, 509 U.S. 389, 391 (1993). Therefore, there is no reason to believe that the competency standard for waiving *Miranda* rights is higher than the competency standard for standing trial. *See id.* at 399. Moreover, "diminished mental capacity alone does not prevent a defendant from validly waiving his or her *Miranda* rights." *Garner*, 557 F.3d at 264.

The Kentucky Supreme Court based its finding that Adams's waiver of his *Miranda* rights was knowing and intelligent on the following evidence: (1) Dr. Noonan testified that, in his expert opinion, Adams was capable of understanding his rights; (2) Detective Eastham testified that Adams had been read his rights three times; (3) the police had gone over the *Miranda* warnings slowly; (4) Adams acknowledged that he understood his rights; (5) Adams signed a written waiver of rights; and (6) Adams had forty prior arrests and was familiar with the *Miranda* warnings and the nature of the criminal justice system. The fact that Dr. Pack disagreed with Dr. Noonan's assessment and testified that Adams was not competent to waive his *Miranda* rights does not render the state court's denial of Adams's Fifth Amendment claim objectively unreasonable. *See Thompson*, 516 U.S. at 111. Thus, the Kentucky Supreme Court's determination that Adams voluntarily, knowingly, and intelligently waived his *Miranda* rights was not objectively unreasonable.

AFFIRMED.

No. 08-5230
Adams v. Haeberlin

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** In light of this court's recent en banc decision in *Garner v. Mitchell*, 557 F.3d 257 (6th Cir.) (en banc), *cert. denied*, 130 S. Ct. 125 (2009), I am constrained to concur in this court's judgment affirming the district court's denial of the petition for a writ of habeas corpus.